UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIANA RIVERA GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-cv-3070 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| VILLAGE OF ARLINGTON HEIGHTS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks a preliminary injunction to enjoin the Village of Arlington Heights from enforcing its ordinance banning short-term rentals. *See* [14]. For the reasons explained more fully below, the Court denies the motion.

## I.  Background & Procedural History

Plaintiff, a traveling nurse, owns a home in Arlington Heights, Illinois, which she shares with her husband. [1] at ¶ 2. Because she travels for work, Plaintiff sometimes lists her home on Airbnb for short-term rentals (her husband ostensibly accompanies her when she works elsewhere). *Id.* ¶¶ 2, 11. Because she planned to list her home on Airbnb, Plaintiff and her husband "invested tens of thousands of dollars into luxury or new furnishings, upgrades and personal property that they would not have otherwise purchased." *Id.* ¶ 13.

On March 2, 2026, the Village of Arlington Heights amended its Health and Sanitation Ordinance to define the use of real property for a short-term rental (that is, a period shorter than 30 consecutive days) as a nuisance. *See id.* at ¶¶ 16–17; [18]

1

at 2–3; [18-1]. The amendment, which took effect July 1, 2026, [1] ¶ 18, springs from a determination by the Village President and the Board of Trustees that short-term rentals threaten "the health, safety, and general welfare of Village residents." [18-1] at 1. Their amendment adds short-term rentals to an enumerated list that already included weeds, offensive businesses, stagnant pools of water, and numerous other "nuisances." *Id.* at 2–3.

On March 18, 2026, Plaintiff sued, *see* [1]. Plaintiff claims that, if she loses the ability to list her property as a short-term rental property, she would not be able to afford the mortgage payments or other expenses associated with owning the home and would be forced to sell (or, worse yet, face foreclosure or bankruptcy). *Id.* ¶ 14. In her complaint, she claims the ordinance denies her due process as guaranteed by the Fourteenth Amendment (Count I); effects a categorical "*per se*" taking in violation of the Fifth Amendment (applied to the states through the Fourteenth Amendment) (Count II); and effects a regulatory taking in violation of the Fifth Amendment (Count III); she also seeks damages under 42 U.S.C. § 1983 due to the deprivation of her constitutional rights (Count IV).

On April 3, 2026, Plaintiff filed a motion for preliminary injunction, seeking to preclude enforcement of the ordinance, [14]. The parties briefed the motion, and it is now ripe for resolution. In connection with the motion, the Court ordered the parties to meet and confer and advise the Court as to whether they believed the preliminary injunction motion required an evidentiary hearing, [16]; they agreed that no

evidentiary hearing was necessary, [20]. For the reasons explained below, the Court now denies the motion.

## II. Discussion & Analysis

### A. Applicable Legal Standards

A preliminary injunction constitutes "an extraordinary remedy" reserved for exceptional cases. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). As such, a party seeking a preliminary injunction must establish it has a likelihood of success on the merits, *Adkins v. Nestle Purina PetCare Co.,* 779 F.3d 481, 483 (7th Cir. 2015), that it has no adequate remedy at law, and that it will suffer irreparable harm if a preliminary injunction is denied, *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *see also Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014).

If the moving party meets these threshold requirements, this Court then "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). To do so, this Court must also consider the public interest in granting or denying the injunction. *Id.* This Court uses a "sliding scale" approach when weighing these considerations. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

### B. Likelihood of Success

### 1. Due Process

To the extent Plaintiff asserts a claim for violation of procedural due process, she has failed to show any likelihood of success. To state a claim for a "violation of procedural due process, a plaintiff must plausibly allege that it was deprived by the government of a liberty or property interest and that there were 'insufficient procedural protections surrounding that deprivation.'" *Stone River Lodge, LLC v. Vill. of N. Utica*, No. 20 C 3590, 2020 WL 6717729, at *3 (N.D. Ill. Nov. 15, 2020) (quoting *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018)). Where the challenged ordinance constitutes "a legislative act of general applicability, not a judicial or quasi-judicial act," "the legislative determination provides all the process that is due." *Id.* (quoting *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982); citing *Bi-Metallic Inv. Co. of State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915)).

To prevail on a substantive due process claim, Plaintiff must "demonstrate either that the ordinance infringes a fundamental liberty interest or that the ordinance is 'arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Greater Chi. Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1071 (7th Cir. 2005) (quoting *Pro–Eco, Inc. v. Bd. of Comm'rs of Jay Conty.*, 57 F.3d 505, 514 (7th Cir. 1995)); *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Plaintiff does not allege the former, and rightfully so. *See, e.g., Mogan v. City of Chicago*, No. 21 C 1846, 2022 WL 159732, at *16 (N.D. Ill. Jan. 18, 2022) (rejecting a substantive due process challenge to the City of Chicago's short-term rental ordinance, in part, because a property owner's "right

4

to use and enjoy his property is not deeply-rooted or sacrosanct," and "substantive due process is not a blanket protection against unjustifiable interferences with property, and it does not confer on federal courts a license to act as zoning boards of appeals.") (first citing *U.S. v. 16.92 Acres of Land*, 670 F.2d 1369, 1373 (7th Cir. 1982); and then quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 508 (7th Cir. 2013)).

Additionally, "there is nothing arbitrary about an ordinance that regulates short-term rentals of property." *Stone River Lodge, LLC*, 2020 WL 6717729, at *4. After studying the matter, the Village lawfully determined that short-term rentals threaten "the health, safety, and general welfare of Village residents," [18-1] at 1, and it thus added short-term rentals to an enumerated list of nuisances that already included weeds, offensive businesses, stagnant pools of water, and numerous other conditions. *Id.* at 2–3. Whether the Village's determination is true or not, this "Court—indeed, any court—may not second-guess the legislature's judgment so long as it has a rational basis." *Bhalerao v. Ill. Dep't of Fin. & Pro. Reguls.*, 834 F. Supp. 2d 775, 786 (N.D. Ill. 2011); *see also Rhinebarger v. Orr*, 839 F.2d 387, 390 (7th Cir. 1988) ("The due process rationality test does not require the courts to second-guess the desirability or value of legislative amendments; this is a distinctively legislative function.").

As a result, Plaintiff has failed to demonstrate a likelihood of success on any due process claim.

5

### 2. Plaintiff's Takings Claims

The "Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.' The Clause is made applicable to the States through the Fourteenth Amendment." *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (citing *Chi., B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)). To be sure, "property may be regulated to a certain extent"; but if a regulation "goes too far" or becomes "so burdensome," it may "be recognized as a taking." *Id.* at 393 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). On one end of the spectrum, a regulation that "denies all economically beneficial or productive use of land" constitutes a taking, requiring just compensation. *Id.* (first citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); and then citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). But even "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (citing *Palazzolo*, 533 U.S. at 617). Additionally, the "complete deprivation of use will not require compensation if the challenged limitations 'inhere ... in the restrictions that background principles of the State's law of property and nuisance already placed upon land ownership.'" *Id.* (quoting *Lucas*, 505 U.S. at 1029).

6

The Supreme Court has emphasized that, in assessing a regulatory taking claim, the key is "flexibility," balancing individuals' property rights on the one hand against the "government's well-established power to 'adjust rights for the public good.'" *Id.* at 394 (quoting *Andrus v. Allard*, 444 U.S. 51, 65 (1979)). The Court has held that "reasonable land-use regulations do not work a taking," and "zoning regulations" constitute "a legitimate exercise of the government's police power." *Id.* at 400. In particular, "a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned." *Palazzolo*, 533 U.S. at 627.

In this case, Plaintiff claims the ordinance amounts to a "total regulatory taking" because it deprives her of "all economically beneficial use" of her house and renders it "economically idle." [14] at 12. But that argument finds no basis in the allegations or the record. Rather, the ordinance bans short-term rentals, lasting fewer than 30 days; Plaintiff remains free to rent out her house to renters for 30 days or more at a time, and she remains free to live in the house or to sell it. Plaintiff claims she has "operated a short-term rental at [her house] since October 2025 as a profitable enterprise," and represents that she "currently has short-term rental guests booked through the summer of 2026." *Id.* ¶¶ 29, 34. She further claims that, due to "the passage of the Ordinance, with an effective date of July 1, 2026, Plaintiff has already had to decline booking requests for short-term rental for periods after July 1, 2026 and is about to cancel previously booked short-term rental [stays scheduled for] after July 1, 2026." *Id.* ¶ 36. Absent immediate relief, she claims she

will have to either sell her house or "face mortgage foreclosure, dispossession and a possibly ruinous deficiency judgment that would force her and her husband into bankruptcy." *Id.* ¶ 37. Notably, although Plaintiff claims she will have to forego income if she remains unable to rent her home on a short-term basis, she does not allege or argue that the value of her property is substantially less than the value of the home if short-term rental were feasible; she does not even allege or argue that her property value is diminished as a result of this limitation.

Finally, as to the character of the government action, the Supreme Court observed in *Penn Central Transportation Co. v. City of New York* that a "taking" "may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. 104, 124 (1978) (citing *U.S. v. Causby*, 328 U.S. 256 (1946)). The ordinance at issue here falls squarely in the latter camp. The Village has indicated that, in its view, short-term rentals constitute a nuisance and pose a risk to the "health, safety, and general welfare of Village residents." [18-1] at 1. In short, the relevant factors weigh against finding a regulatory taking here, and Plaintiff has thus failed to demonstrate a likelihood of success on her takings claim.

Plaintiff claims the Village's amendment was ultra vires and that it reflects a "discriminatory classification without a rational relationship to a legitimate public purpose." [14] at 9. But she does not support these conclusions with facts and cites

8

no authority to allow this Court to substitute its judgment for the Village's judgment concerning what constitutes a nuisance and what does not.[1]

### C. Other Preliminary Injunction Factors

Having determined that Plaintiff has failed to demonstrate a likelihood of success on the merits of her claims, the Court touches only briefly upon any alleged inadequate remedy at law and irreparable harm. Plaintiff's argument as to these factors appears to be that, absent relief, she will lose her home; damages thus remain inadequate because they will come too late. *See.* But she does not explain why this is so, and the Ordinance unquestionably has no impact on her ability to rent her home on a longer term basis or to sell her home voluntarily, on her own timetable. Her damages claim also undermines her claim that damages remain inadequate to compensate her for the Ordinance's impact on her property rights. Because Plaintiff has failed to carry her burden as to these points, the Court need not balance the equities or consider the public policy implications of any injunction.

---

[1] Plaintiff's claim for damages under § 1983 in Count IV remains predicated upon the other alleged constitutional violations and deprivations of rights. As a result, her failure to demonstrate a likelihood of success on the underlying claims also precludes her from demonstrating a likelihood of success on her § 1983 claim.

## IV. Conclusion

For the reasons stated above, this Court denies Plaintiffs' motion for preliminary injunction [14]. The parties shall file a joint status report by July 20, 2026, using the model template set forth in this Court's standing order regarding Initial (or Reassignment) Status Conferences.

Dated: July 6, 2026                                  Entered:

John Robert Blakey
United States District Judge

10